NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0327n.06

No. 25-6071

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Jul 22, 2026

KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| DENNIS LOGGINS, | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| v. | ) | |
| COSTCO WHOLESALE CORPORATION, | ) | |
| Defendant-Appellee. | ) | OPINION |

Before: BATCHELDER, MOORE, and THAPAR, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** While working at a Costco store in Memphis, Tennessee, Dennis Loggins brought two racial-discrimination actions against Costco. While the second action was pending, Loggins accused his supervisor, Stefan Mannsbart, of assaulting him at work and claimed that the incident had been captured by the store's security cameras. Loggins's account shifted, however, and the store's security-camera footage revealed that Mannsbart never touched Loggins. Costco subsequently came to believe that Loggins falsely told a coworker that he filed charges against Mannsbart, and in the course of the pending action, learned that Loggins had covertly recorded a conversation with a different coworker. After Costco fired Loggins for these infractions, he filed this action pursuant to Title VII and 42 U.S.C. § 1981, claiming that Costco retaliated against him for producing the audio recording in his pending action. Because we conclude that firing Loggins for recording a coworker without her permission was not a pretext for retaliation, we **AFFIRM** the district court's grant of summary judgment to Costco.

## I. BACKGROUND

Loggins, a Black man, worked at Costco for a little over eight years. R. 31 (Pl.'s Resp. to Def.'s Statement of Material Facts ("SOMF") ¶¶ 1, 54) (Page ID #795, 805); R. 24 (Am. Answer ¶ 3) (Page ID #89–90). In December 2014, the general manager of Costco's northeast Memphis store, Mannsbart, hired Loggins to work as a bakery manager. R. 31 (Pl.'s Resp. to Def.'s SOMF ¶ 1) (Page ID #795). Following multiple demotions and a transfer, Loggins wound up as a cashier at a Costco store in southeast Memphis in July 2021. *Id.* ¶¶ 2–3 (Page ID #795). Mannsbart also transferred to that Costco location, having taken over as its general manager. *Id.* ¶ 2 (Page ID #795); R. 27-4 (Mannsbart Decl. ¶ 3) (Page ID #151).

Loggins's relationships with Mannsbart and Costco were strained. Loggins "didn't like" Mannsbart and acknowledged that they "had some personality conflicts over the years" and that "there was a lot of animosity between" them. R. 30-2 (Loggins Dep. at 176, 181–82) (Page ID #766, 768). And by early 2023, he had brought two employment-discrimination actions against Costco. The first, he filed in 2017 and lost in 2019. *Loggins v. Costco Wholesale Corp.*, No. 2:17-CV-2688, 2019 WL 2203120, at *1 (W.D. Tenn. May 21, 2019) (the "2017 action"). The second, he filed in 2022 and lost in 2024. *Loggins v. Costco Wholesale Corp.*, No. 2:22-CV-2026, 2024 WL 5486270, at *1 (W.D. Tenn. Jan. 10, 2024) (the "2022 action").

While the 2022 action was pending, on February 21, 2023, Loggins called human resources ("HR") to lodge a complaint against Mannsbart. R. 31 (Pl.'s Resp. to Def.'s SOMF ¶¶ 26–27) (Page ID #799). Speaking with HR, Loggins claimed that about a week earlier (he could not remember the exact date), "Mannsbart had made contact with him via a 'mild shoulder rub'" as Loggins was clocking in for work. *Id.* ¶¶ 27–28 (Page ID #799). He further asserted that he knew

the incident had been caught on camera. *Id.* ¶ 28 (Page ID #799). The next day, HR reported the incident up the chain of command to Justin Spira, a vice president and regional manager. *Id.* ¶ 30 (Page ID #800). Spira then called Loggins to ask about the incident. *Id.* ¶ 32 (Page ID #800). During that call, Loggins told Spira that Mannsbart had assaulted him "around the time" that he spoke to HR—not a week earlier, as he told HR. *Id.*

Following his call with Loggins, Spira tasked a member of Costco's loss-prevention team with reviewing security-camera footage to assess Loggins's claim. R. 27-8 (Constable Decl. ¶ 3) (Page ID #641). An employee reviewed footage that captured the store's time clock, where Loggins claimed the incident occurred, from February 10 to 22. *Id.* The video footage did not corroborate Loggins's account. During that period, Loggins and Mannsbart were near the time clock together just once, on February 11, and Mannsbart did not touch Loggins.[1] *Id.* ¶¶ 3–5 (Page ID #641–42); *see also* R. 27-9 (Hooper Decl. ¶¶ 3–18) (Page ID #645–48); R. 27-10 (McKinley Decl. ¶¶ 4–21) (Page ID #665–70). After learning of the results of the video review, Spira believed that Loggins had lied. R. 27-6 (Spira Decl. ¶ 9) (Page ID #486).

Notwithstanding the security-camera footage, Loggins avers that Mannsbart did, in fact, assault him. In addition to his own account, *see, e.g.*, R. 30-2 (Loggins Dep. at 60–61) (Page ID #737–38), he points to the affidavit of a Costco customer, Elve Maclin, who claims that "[a] few days after Valentine['s day] in 2023" she "witnessed Mr. Loggins standing at the time clock when . . . Mannsbart . . . bumped him with his shoulder." R. 30-1 (Maclin Aff. at 1–2) (Page ID #719–20).

---

[1]For every day Loggins worked in February 2023, Costco introduced security-camera footage capturing the area where Loggins claims Mannsbart assaulted him. *See* R. 31 (Pl.'s Resp. to Def.'s SOMF ¶¶ 65–67) (Page ID #808); R. 27-10 (McKinley Decl. ¶¶ 4–21) (Page ID #665–70).

Mannsbart claimed that on February 17, four days before Loggins called HR, one of Loggins's coworkers, Winfred Hamilton, told him that that Loggins "had filed charges with the police against [Mannsbart] for allegedly bumping into him while at work." R. 27-4 (Mannsbart Decl. ¶ 15) (Page ID #154). Loggins insists that he did not tell Hamilton that he filed charges but does not dispute that Hamilton told Mannsbart that he had done so.[2] *See* R. 30-2 (Loggins Dep. at 112–14, 159–60) (Page ID #750–51, 762); *see also* D. 13 (Appellant Br. at 10–11). From Mannsbart, Hamilton's report made its way to the lawyers defending Costco in the 2022 action. *See* R. 31 (Pl.'s Resp. to Def.'s SOMF ¶ 41) (Page ID #802); R. 27-11 (2/23/2023 Emails at 1) (Page ID #688). One of Costco's lawyers reached out to Loggins's lawyer, who stated that "Mr. Loggins has not made a police report." R. 27-11 (2/23/2023 Emails at 1) (Page ID #688). Spira learned of what Hamilton had told Mannsbart and Loggins's lawyer's response, and "believed that Mr. Loggins had spread malicious and false gossip." R. 27-6 (Spira Decl. ¶ 5) (Page ID #485).

On March 16, 2023, Loggins's lawyer deposed another of Loggins's coworkers, Angela Tuggle, in connection with the 2022 action. R. 31 (Pl.'s Resp. to Def.'s SOMF ¶ 46) (Page ID #803). While deposing Tuggle, Loggins's lawyer informed her that Loggins had created an audio recording of her in 2017. *Id.* Loggins made the recording at work without Tuggle's consent. *Id.* ¶ 45 (Page ID #803). On the recording, Loggins and Tuggle discuss Costco's passing Tuggle over for numerous promotions. R. 30-2 (Loggins Dep. at 90) (Page ID #745). A day after Tuggle's deposition, Tuggle submitted a written complaint that ultimately reached Spira and Wendy Davis, a senior vice president. R. 31 (Pl.'s Resp. to Def.'s SOMF ¶ 48) (Page ID #803–04). Tuggle wrote

---

[2]Put differently, Loggins asserts that Hamilton was mistaken in his conversation with Mannsbart, not that Mannsbart fabricated this interaction with Hamilton.

that she "was very upset" when she learned that Loggins had recorded her and urged Costco to terminate him. R. 27-4 (Tuggle Ltr.) (Page ID #165). Loggins had previously disclosed the audio recording of Tuggle to Costco's outside counsel in connection with the 2017 action. R. 30-2 (Loggins Dep. at 22–25) (Page ID #728–29). According to Costco, however, Mannsbart, Spira, Davis, and Yoram Rubanenko (Costco's Chief Operations Officer) learned that Loggins had recorded Tuggle without her consent in February 2023 at the earliest. R. 31 (Pl.'s Resp. to Def.'s SOMF ¶ 49) (Page ID #804); R. 34 (Def.'s Resp. to Pl.'s Statement of Disputed Facts ¶ 2) (Page ID #824–25).

Reviewing Loggins's actions since February, Spira and Davis believed that Loggins had committed three fireable offenses. R. 27-6 (Spira Decl. ¶ 13) (Page ID #486); R. 27-12 (Davis Decl. ¶ 7) (Page ID #692). First, they concluded that Loggins had lied when he claimed that Mannsbart assaulted him, violating the employee agreement's provisions regarding "dishonest[y]" and "spread[ing] malicious gossip." *Id.* Second, they determined that Loggins violated those provisions again when, as far as they believed, he falsely told Hamilton that he had filed a police report against Mannsbart. *Id.* And third, they deemed Loggins's recording of Tuggle a violation of the employee agreement's prohibition of "record[ing] a co-worker without the co-worker's consent." *Id.* As a result, Spira and Davis decided to issue Loggins a counseling notice and to suspend him on March 25, 2023. R. 31 (Pl.'s Resp. to Def.'s SOMF ¶ 52) (Page ID #805).

Two days later, on March 27, Loggins filed a police report against Mannsbart. *Id.* ¶ 61 (Page ID #807). In the police report, "Loggins claimed he was 'assaulted' at work by Mannsbart, and that Mannsbart had 'shov[ed him] with his shoulders' on February 14, 2023." *Id.* ¶ 62 (Page ID #807) (alteration in original). The next day, March 28, Spira and Davis fired him with

Rubanenko's approval. *Id.* ¶ 54 (Page ID #805); R. 27-6 (Spira Decl. ¶ 15) (Page ID #487); R. 27-12 (Davis Decl. ¶ 9) (Page ID #693); R. 27-13 (Rubanenko Decl. ¶ 3–4) (Page ID #695–96). In April, Loggins "appeal[ed]" his termination to Rubanenko, claiming again that Mannsbart had shoved him. R. 31 (Pl.'s Resp. to Def.'s SOMF ¶ 60) (Page ID #807); R. 27-13 (Rubanenko Decl. ¶ 5) (Page ID #696). Rubanenko denied Loggins's request for reinstatement. R. 27-5 (4/28/2023 Rubanenko Email) (Page ID #482).

Loggins subsequently brought retaliation claims under Title VII and § 1981.[3] R. 1 (Compl. ¶¶ 38–41) (Page ID #9–10). Following discovery, Costco moved for summary judgment, which Loggins opposed. R. 27-1 (Def.'s MSJ at 1–18) (Page ID #116–33); R. 30-5 (Pl.'s MSJ Opp'n) (Page ID #784–94). The district court granted summary judgment to Costco, finding both that Loggins failed to establish a prima facie case of retaliation and that even if he had, he could not show that all three bases for his firing were pretexts for retaliation. *Loggins v. Costco Wholesale Corp.*, No. 2:23-CV-2749, 2025 WL 2988464, at *8–11 (W.D. Tenn. Oct. 23, 2025). This appeal timely followed. R. 45 (Notice of Appeal at 1–2) (Page ID #901–02).

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's grant of summary judgment. *Smith v. P.A.M. Transp., Inc.*, 154 F.4th 375, 382 (6th Cir. 2025). Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence in the light most favorable to the

---

[3]Loggins also brought racial-discrimination claims under Title VII and § 1981. R. 1 (Compl. ¶¶ 25–37, 42–49) (Page ID #7–11). He, however, does not address them on appeal, so his racial-discrimination claims and their factual underpinnings are not relevant here. *See Franklin v. Franklin County*, 115 F.4th 461, 480 (6th Cir. 2024).

nonmovant and draw all reasonable inferences in their favor. *Smith*, 154 F.4th at 382. A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## B. Retaliation Claims

Both Title VII and § 1981 prohibit employers from retaliating against employees who oppose racial discrimination, 42 U.S.C. § 2000e-3(a); *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 454–55 (2008), and retaliation claims brought under both statutes have the same elements, *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019). When, as here, a plaintiff's retaliation claims rest on circumstantial evidence, we evaluate their claims under *McDonnell Douglas*'s three-part burden-shifting framework. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). The plaintiff first bears the burden of establishing "a prima facie case that [their] employer fired [them] in response to protected activity." *Bashaw v. Majestic Care of Whitehall, LLC*, 130 F.4th 542, 548 (6th Cir. 2025). If the plaintiff does so, the employer bears the burden of producing "legitimate non-retaliatory reasons for [the] termination." *Id.* And once the employer supplies non-retaliatory rationales, the plaintiff must "show that these proffered reasons were pretextual." *Id.* Throughout this analysis, the plaintiff retains "[t]he ultimate burden" of establishing that their employer "retaliated against [them] for engaging in protected activity." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021).

Loggins contends that he engaged in protected activity when his lawyer "produced" the audio-recording of Tuggle in connection with the 2022 action. D. 13 (Appellant Br. at 7, 9, 12,

20).  It bears emphasizing that he does not argue that recording Tuggle was a protected activity.[4]

We assume without deciding that Loggins can establish a prima facie case of retaliation, and we choose to resolve this appeal at the third step of the *McDonnell Douglas* analysis.  *See Bashaw*, 130 F.4th at 548.  Plaintiffs generally may "show pretext in three interrelated ways:  (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that the proffered reasons were insufficient to motivate the employer's action."  *Jackson*, 999 F.3d at 350–51 (citation modified).  When an employer offers multiple legitimate, non-retaliatory rationales, the plaintiff must generally rebut them all.  *Bashaw*, 130 F.4th at 548–49; *Barnard v. Powell Valley Elec. Coop.*, No. 21-5447, 2022 WL 1261831, at *9 (6th Cir. Apr. 28, 2022).  "In other words, if the employer proffers a single independent nondiscriminatory reason for its conduct, that can defeat a retaliation claim."  *Bashaw*, 130 F.4th at 549.

As it did below, Costco proffers three non-retaliatory rationales for Loggins's termination—(1) Loggins falsely reported to HR that Mannsbart assaulted him; (2) Loggins falsely told Hamilton that he reported Mannsbart to the police; and (3) Loggins recorded Tuggle without her permission.  D. 15 (Appellee Br. at 16–30); R. 27-1 (Def.'s MSJ at 9, 17–18) (Page ID #124, 132–33).  Costco argues that these were independent grounds for Loggins's termination—a characterization that Loggins does not dispute.  D. 15 (Appellee Br. at 7–8).  Loggins argues that

---

[4]Loggins hints at this argument at times.  *See* D. 13 (Appellant Br. at 18).  But because Loggins "adverts to" the argument "in a perfunctory manner, unaccompanied by some effort at developed argumentation," he has forfeited it.  *Frasure v. City of Wyoming*, No. 25-3750, 2026 WL 1230556, at *9 (6th Cir. May 5, 2026) (citation modified).

these rationales were pretextual because they lacked bases in fact and were insufficient to motivate his firing.[5] We consider these arguments in turn.

Loggins cannot show that these rationales lacked bases in fact. First, he readily admits that he recorded Tuggle without her consent in violation of Costco's employee agreement. R. 31 (Pl.'s Resp. to Def.'s SOMF ¶¶ 8, 45) (Page ID #796, 803). Second, he agrees that Costco's security-camera footage "show[s] us what happened or didn't happen" between him and Mannsbart. R. 30-2 (Loggins Dep. at 133–34) (Page ID #756). And that footage reveals that Mannsbart never touched Loggins. R. 27-8 (Constable Decl. ¶ 3–5) (Page ID #641–42); R. 27-9 (Hooper Decl. ¶¶ 3–18) (Page ID #645–48); R. 27-10 (McKinley Decl. ¶¶ 4–21) (Page ID #665–70). Indeed, Loggins does not even attempt to rely on the security-camera footage to support his assertion that Mannsbart assaulted him, relying instead on his deposition testimony and Maclin's affidavit. D. 13 (Appellant Br. at 22–23). But "witness accounts [that] contradict an unambiguous video recording do not create a triable issue." *Shreve v. Franklin County*, 743 F.3d 126, 132 (6th Cir. 2014) (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)). Third, Loggins conceded that Costco's decisionmakers honestly "believed that [he] had falsely stated to Winfred Hamilton that [he] had filed a police report." R. 30-2 (Loggins Dep. at 159–60) (Page ID #762). Loggins has thus failed to "rebut[] that [Spira, Davis, and Rubanenko] honestly believed the allegation[] of misconduct" supplied by Hamilton. *Hieber v. Oakland County*, 136 F.4th 308, 329 (6th Cir. 2025). Loggins, therefore, cannot demonstrate that Costco's rationales lacked bases in fact.

Loggins also cannot show that his infractions were insufficient cause for his termination.

---

[5]On appeal, Loggins also argues that Costco's legitimate, non-retaliatory rationales did not actually motivate Spira, Davis, and Rubanenko to fire him. *See* D. 13 (Appellant Br. at 21–22, 28). He, however, did not raise this argument below, so we do not consider it. *Ramgoolam v. Gupta*, 173 F.4th 234, 242 (6th Cir. 2026).

To make this showing, Loggins must "point to similarly-situated employees, known as comparators, who were not fired even though they engaged in the same or similar conduct." *Bashaw*, 130 F.4th at 551. When evaluating whether comparators' actions were substantially similar to the plaintiffs, we often consider "the employees' supervisors, the standards that the employees had to meet, and the employees' conduct. But the weight to be given to each factor can vary depending upon the particular case." *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 369 (6th Cir. 2007) (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003)), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012) (en banc). When comparing the employees' conduct, "we . . . focus on the severity of the differently treated employees' actions." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 780 (6th Cir. 2016). The plaintiff need not show that "those actions violated the same company rule or policy," *id.*, or "introduce evidence showing that [the comparator] engaged in identical conduct," *Macy*, 484 F.3d at 370. Instead, the plaintiff must "merely [show] that [the comparator] engaged in conduct of 'comparable seriousness,'" *id.* (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11 (1976)), and that the comparator is "similar in all of the *relevant* aspects," *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (citation modified).

Loggins identifies two comparators, Jacqueline Davis and Luterio Ramirez. D. 13 (Appellant Br. at 25–28). Costco issued Davis a counseling notice and demoted her after she "inaccurately logg[ed] the time of an employee's sick call and walk[ed] out of a meeting before it had been resolved." R. 31 (Pl.'s Resp. to Def.'s SOMF ¶ 58) (Page ID #806–07). Ramirez, on the other hand, threatened Loggins. *See* R. 30-2 (Loggins Dep. at 161–63) (Page ID #763); R. 27-4 (Ramirez Counseling Notice) (Page ID #167). Costco, as a result, issued Ramirez a counseling

10

notice and separated him from Loggins by transferring him "to a different department." R. 31 (Pl.'s Resp. to Def.'s SOMF ¶ 57) (Page ID #806); R. 27-4 (Ramirez Counseling Notice) (Page ID #167).

These comparators do not show that Loggins's firing was pretextual, however, because Loggins fails to compare their misconduct to his own. For example, Loggins never unpacks how Davis's and Ramirez's misconduct was of similar severity to Loggins's recording Tuggle. *See* D. 13 (Appellant Br. at 26–27). Loggins, in other words, does not present comparator evidence that rebuts Costco's third legitimate, non-retaliatory rationale. Even if he had done so, Costco determined that Loggins committed three fireable infractions. But Loggins makes no effort to describe the disciplinary histories of either Davis or Ramirez. *See id.* We have explained that "[d]ifferences in . . . disciplinary history" can "establish that [a plaintiff] and [their] comparators . . . are not similarly situated." *Robinson v. Quicken Loans, LLC*, No. 21-1392, 2022 WL 4234072, at *6 (6th Cir. Sept. 14, 2022). And both below and on appeal, Costco has consistently emphasized that Loggins committed three fireable offenses. *See, e.g.*, R. 27-1 (Def.'s MSJ at 9) (Page ID #124); D. 15 (Appellee Br. at 16–30). As a consequence, "absent additional evidence, a jury could" compare Loggins, Davis, and Ramirez "only by filling in the details with speculation."[6] *Macy*, 484 F.3d at 370.

---

[6]Loggins also argues that Mannsbart harbored retaliatory animus and seeks to impute that retaliatory animus to Spira, Davis, and Rubanenko via a cat's paw theory. D. 13 (Appellant Br. at 23–25). "In the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Marshall v. Rawlings Co.*, 854 F.3d 368, 377 (6th Cir. 2017) (quoting *EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006)). Loggins, however, baldly asserts that Mannsbart was "the driving force" behind his termination without articulating how Mannsbart participated in the decision to terminate him. R. 13 (Appellant Br. at 23–25). Because Loggins "adverts to" his cat's paw theory "in a perfunctory manner, unaccompanied by some effort at developed argumentation," he has "forfeited" the argument. *Frasure v. City of Wyoming*, No. 25-3750, 2026 WL 1230556, at *9 (6th Cir. May 5, 2026) (citation modified).

In sum, Loggins's decision to record Tuggle without her permission provided Costco an independent basis for his termination that no reasonable jury could find pretextual. We thus affirm the district court's grant of summary judgment to Costco "on this ground alone." *See Barnard*, 2022 WL 1261831, at *9.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.